IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORFOLK COUNTY RETIREMENT | ) | |
| SYSTEM and PLUMBERS LOCAL UNION | ) | |
| 519 PENSION TRUST, individually and on | ) | |
| behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 07 C 7014 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| DANIEL C. USTIAN, ROBERT C. LANNERT, | ) | |
| MARK T. SCHWETSCHENAU, NAVISTAR | ) | |
| INTERNATIONAL CORPORATION, and | ) | |
| DELOITTE & TOUCHE LLP, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Norfolk County Retirement System and Plumbers Local Union 519 Pension Trust have brought a three-count, 200-page, 542-paragraph, putative consolidated class action complaint against defendants: Navistar International Corporation ("Navistar"); its President and Chief Executive Officer Daniel C. Ustian ("Ustian"); its former Chief Financial Officer Robert C. Lannert ("Lannert"); its former Senior Vice President, Controller, and principal accounting officer Mark T. Schwetschenau ("Schwetschenau") (together, the "individual defendants," and with Navistar the "Navistar defendants"); and its former outside auditor, the accounting firm of Deloitte & Touche, LLP ("Deloitte"). Plaintiffs allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 24.10b-5. Plaintiffs' claims stem from purported losses suffered by purchasers of Navistar securities from February 14, 2003, through July 17, 2006, (the "Class Period") as a result of alleged systematic accounting fraud.

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). For the reasons explained below, the Navistar defendants' motion to dismiss is denied, and Deloitte's motion to dismiss is granted.

## BACKGROUND

Navistar specializes in the manufacture and distribution of trucks, buses, and diesel engines, and primarily operates in the United States, Canada, Mexico, and Brazil. During the Class Period, Navistar was a publically traded company listed on the New York Stock Exchange and was required to make annual filings with the Securities and Exchange Commission ("SEC").

On December 10, 2007, Navistar filed its fiscal year 2005 report with the SEC on Form 10-K (the "2005 10-K"). The 2005 10-K described the results of a restatement and re-audit of Navistar's financial statements for 2003, 2004, and the first three quarters of 2005 (the "Restatement"), and disclosed that over this three year period, Navistar had misstated its financial position and results of operations by billions of dollars. The Restatement stated that an internal company investigation uncovered numerous accounting errors, weaknesses in its internal controls, and intentional conduct aimed at improving the reported financial results of certain business segments. During the Class Period, Navistar overstated its net income by $677 million, reporting a net income of $361 million, whereas the company had actually lost $316 million.[1] Additionally, Navistar overstated stockholder equity. The company originally claimed

---

[1] Navistar originally reported net loss of $21 million in 2003, and net income of $247 million in 2004 and $135 million in 2005. The restated and re-audited financial results revealed actual net loss of $333 million in 2003 and $44 million in 2004, and net income of $61 million in 2005.

stockholder equity of $292 million in 2003 and $531 million in 2004, whereas the restated numbers revealed that stockholders actually held a deficit of $1.8 billion and $1.85 billion, respectively. The Restatement also disclosed that Navistar had replaced defendants Lannert and Schwetschenau.

Deloitte provided Navistar with audit opinions for its 2003 and 2004 annual consolidated financial statements. Plaintiffs allege that while Deloitte was employed by Navistar, Deloitte knowingly or recklessly: (1) ignored "red flags" of Navistar's generally accepted accounting principles ("GAAP") violations; (2) disregarded that Navistar's financial statements materially misstated the Company's true financial position; and (3) represented that its audits of Navistar were conducted in accordance with generally accepted auditing standards ("GAAS"). Deloitte was later replaced by the accounting firm KPMG LLP ("KPMG") in April 2006 for purposes of re-auditing Navistar's 2003, 2004, and 2005 financial statements.

The complaint alleges that defendants gradually released information into the market about the alleged securities fraud in a series of partial corrective disclosures, beginning in December 2005. These disclosures included:[2]

> 1.* On December 14, 2005, Navistar disclosed that it had postponed a scheduled meeting with securities analysts and shareholders because its external audit for fiscal year 2005 was not complete. Stock prices dropped $2.11 per share that day, to close at $28.17.

> 2.* On January 17, 2006, Navistar announced that the filing of its 2005 10-K would be further delayed as a result of continuing unresolved accounting items. By close of market on January 19th, Moody's Investor Service ("Moody's"), Standard & Poors Rating Service, and Fitch Ratings, had issued statements

---

[2] Starred items represent the six partial disclosures highlighted by plaintiffs in their complaint and briefing papers.

downgrading their respective ratings of Navistar and attributing the changes to concerns with the financial statements/audits. Stock prices fell by $1.03 per share from January 17, 2006 to January 20th, to close at $25.87.

3.*  On February 3, 2006, Navistar issued a Form 8-K informing investors that is was in default on its 4.75% Subordinated Exchangeable Notes due in 2009.  By midday, Moody's issued a statement that it was downgrading Navistar's ratings because of uncertainty about release of the financial statements and ongoing audit related issues.  Stock prices fell by $0.66 per share that day, closing at $27.13.

4.  On February 16, 2006, Navistar issued an update on the progress on the 2005 10-K.  The press release revealed that Schwetschenau, the company's principal accounting officer, had been reassigned to another position within the company to facilitate the completion of the audit.

5.  On February 21, 2006, Navistar issued another press release updating the accounting review.  The statement detailed many items being reviewed, informed investors that outside consultants had been hired to assist with the efforts (including Huron Consulting Group and Skadden, Arps, Slate, Meagher & Flom, LLP), and included the first mention of the possibility of a restatement of previously issued financial statements.  Stock prices fell by $0.51 from February 17, 2006, to February 21st, closing at $28.40.

6.  On March 17, 2006, Navistar issued a Form NT 10-Q Notice of Late Filing stating that it would not file its Form 10-Q for the quarter ending January 31, 2006, by the March 17, 2006, deadline because it had "several unresolved and complex accounting issues" from the first three quarters of 2005 under review. Stock prices fell by $0.40 the following week.

7.  On April 7, 2006, Navistar issued a press release announcing that it would be restating its financial results for the fiscal years 2003, 2004, and the first three quarters of 2005, and detailing the items under review.  The press release also announced that Navistar was replacing Deloitte with KPMG as external auditors.

8.  On April 12, 2006, Navistar issued a Form 8-K addressing its change in auditors, making several disclosures about the state of its financial statements, and informing shareholders that it was no longer willing to rely on the representations of Schetschenau.

9.  On April 28, 2006, Navistar issued a Form 8-K/A amending its Form 8-K of April 12, 2006.  The amended form disclosed a letter from Deloitte to the SEC regarding its view of the content Navistar's Form 8-K. Deloitte reported that it had found significant deficiencies in Navistar's internal controls.

10.* On May 3, 2006, a Credit Suisse analyst downgraded Navistar's rating, citing "confidence issues" related to accounting problems. Stock prices fell $1.38 per share in two days, closing at $24.41 on May 4th. From April 7, 2006 to May 4, 2006, the stock declined $3.70 per share.

11. On May 30, 2006, Bear Stearns downgraded Navistar's rating and highlighted its outstanding accounting problems. That day stock prices fell by $2.37, to close at $26.64.

12.* On June 2, 2006, Navistar issued a press release announcing its plan to file its 2006 Form 10-K by mid-January 2007, disclosing that Navistar had conducted an investigation into "the propriety of accounting and auditing confirmation matters relating to vendor rebates." That day stock prices fell by $0.87, to close at $26.48.

13. On June 7, 2006, Navistar held a conference call to discuss its financial result for the first six months of fiscal year 2006.

14.* On July 17, 2006, Moody's announced it would withdraw its ratings of Navistar's debt, revealing to investors the severity of Navistar's accounting problems and the resulting credit rating implications. That day stock prices fell $0.06 per share.

During this seven-month period, Navistar common shares lost $9.33 (30%) in value.

## DISCUSSION

### I. Legal Standard

Defendants have moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6) and 9(b). When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claims rest. The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-73, 167 L.Ed. 2d 929 (2007).

Additionally, allegations of fraud must meet the particularity requirements of Fed. R. Civ. P.

9(b).  In a securities fraud case, Rule 9(b) "requires the essential elements of scienter be pled

with a sufficient level of factual support; the complaint "must afford a basis for believing that

plaintiffs would prove scienter."  In re HealthCare Compare Corp. Securities Litigation, 75 F.3d

276, 281 (7th Cir. 1996).

In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA") establishes

heightened pleading standards in securities cases where there are allegations of false or

misleading statements or omissions of material fact.  The PSLRA provides in relevant part:

> In any private action arising under this title . . . in which plaintiff alleges that the
> defendant –
>
> > (A) made an untrue statement of a material fact; or
> >
> > (B) omitted to state a material fact necessary in order to make the
> > statements made, in the light of the circumstances in which they were
> > made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the
> reason or reasons why the statement is misleading, and, if an allegation regarding
> the statement or omission is made on information and belief, the complaint shall
> state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

The PSLRA requires that where "the plaintiff may recover money damages only on proof

that the defendant acted with a particular state of mind," the complaint must "state with

particularity facts giving rise to a strong inference that the defendant acted with the required state

of mind."  15 U.S.C. § 78u-4(b)(2).  A strong inference is not "merely plausible or reasonable,"

but must be "cogent and compelling" as compared to other explanations which may be inferred

from the facts alleged.  <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 308, 127 S. Ct. 2499, 2504, 168 L.Ed.2d 179, 188 (2007).  The "required state of mind" in a 10(b) case is scienter, which is defined as "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false."  <u>Higginbotham v. Baxter Int'l, Inc.</u>, 495 F.3d 753, 756 (7th Cir. 2007).  The Seventh Circuit has rejected the "group pleading doctrine," thus requiring plaintiffs to plead facts creating a strong inference of scienter with respect to each defendant. <u>Pugh v. Tribune Co.</u>, 521 F.3d 686, 693 (7th Cir. 2008).

## II. Defendants' Motions to Dismiss Counts I & II

Counts I and II of the complaint arise under Section 10(b) of the Exchange Act, and SEC Rule 10b-5.  Count I is brought against Navistar and three executive officers: Ustian, Lannert, and Schwetschenau.  Count II is brought against Deloitte.  Defendants have moved to dismiss for failure to state a claim, arguing that Counts I and II fail to meet the pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") amendment to the Exchange Act.

Section 10(b) of the Exchange Act makes it "unlawful for any person, directly or indirectly, . . . [to] use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance . . . ." 15 U.S.C. § 78j.  The elements of a Rule 10b-5 claim are: (1) defendants made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which the plaintiffs justifiably relied; and (5) that the false statement proximately caused; (6) plaintiffs' economic loss.

<u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, 128 S. Ct. 761, 768 (U.S. 2008). At issue in the instant motion are the second and fifth elements.

To determine whether Counts I and II state a claim the court must accept all factual allegations in the complaint as true and consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on 12(b)(6) motions, including documents incorporated into the complaint by reference and matters of which a court may take judicial notice. <u>Tellabs</u>, 551 U.S. at 322 (internal citation omitted).

In separate motions to dismiss, the Navistar defendants and Deloitte each contend that plaintiffs have failed to satisfactorily state a claim under the foregoing pleading standards. Because the factual allegations that purportedly establish loss causation, with respect to the Navistar defendants, and scienter with respect to the Navistar defendants and Deloitte, focus on different activities, the court will examine each motion separately.

## *A. Navistar Defendants' Motion to Dismiss Count I*

The Navistar defendants raise two primary challenges to plaintiffs' Rule 10b-5 claims. First, they argue that the complaint fails to establish loss causation. Second, they argue that plaintiffs fail to plead particularized facts to raise a strong inference of scienter. The court rejects both arguments.

### *1. Loss Causation*

A Rule 10b-5 claim allows for recovery only where a plaintiff adequately pleads both "transaction causation" and "loss causation." <u>Caremark, Inc. v. Coram Healthcare Corp.</u>, 113

F.3d 645, 648 (7th Cir. 1997).  To plead transaction causation, a plaintiff must allege that it would not have invested in the securities instrument but for the fraud.  Id.  To plead loss causation, a plaintiff must allege that "it was the very facts about which the defendant lied which caused its injuries."  Id.  Loss causation requires that plaintiffs allege that, "'but for the circumstances that the fraud concealed, the investment . . . would not have lost its value.'"  Ray v. Citigroup Global Markets, Inc., 482 F.3d 991, 995 (7th Cir. 2007) (quoting Caremark,, 113 F.3d at 648-49).  This requirement is the same standard as that required to allege common law fraud, and "does not require that the plaintiff plead that all of its losses can be attributed to the false statement of the defendant."  Caremark, 113 F.3d at 649.  Rather, plaintiffs must allege that they suffered economic loss when Navistar's share price fell after the relevant truth about the fraud became known in the marketplace.  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005).

A plaintiff in a securities fraud action cannot adequately plead loss causation by merely alleging that the price of a security was inflated as a result of defendants' misrepresentations.  Id.  To survive a motion to dismiss, the plaintiff must "provide a defendant with some indication of the loss and the causal connection that the plaintiff had in mind."  Id.  In Dura the Supreme Court made clear that a plaintiff must allege that "the truth became known" before "the share price fell."  Id.; see also In re Bradley Pharm., Inc. Sec. Litig., 421 F. Supp. 2d 822, 828 (D.N.J. 2006).  However, the Dura Court did not specify what form a disclosure must take, to what extent it must reveal misrepresentations, or how it must refer to the misstatements or omissions.  In re Motorola Sec. Litig., 505 F. Supp. 2d 501, 540 (N.D. Ill. 2007) (concluding that "Dura does not impose a 'corrective disclosure' requirement for showing loss causation.").  A "corrective

disclosure" refers to an event where the truth about previously misrepresented information is revealed and is followed by a decline in share price.

Loss causation may be pled on a theory of partial disclosures. See <u>Dura</u>, 544 U.S. at 342 (referring to truth about misrepresentation beginning to "leak out" into the marketplace); see also <u>In re Bradley Pharms.</u>, 421 F. Supp. 2d at 828-29 (finding that the relevant 'truth' was not released as "a single, unitary disclosure, but occurred through a series of disclosing events."); <u>In re Motorola</u>, 505 F. Supp. 2d at 540 (discussing the conclusion of several courts and commentators that <u>Dura</u> does not impose a "corrective disclosure" requirement for showing loss causation, and concluding that "a disclosure sufficient to satisfy loss causation can occur in ways other than an announcement that points directly to a previous representation and proclaims its falsity." ).[3]

---

[3] The Seventh Circuit has described three approaches a plaintiff may take when pleading loss causation. See <u>Ray</u>, 482 F.3d 991 at 995. The first approach, referred to as "materialization of risk," was discussed in <u>Caremark</u>. "Materialization of risk" requires the plaintiff to prove that "it was the very facts about which the defendant lied which caused its injuries." <u>Caremark</u>, 113 F.3d at 648 (plaintiff adequately pled loss causation by alleging that defendant company's failure to disclose potential merger caused plaintiff injury by undervaluing the financial risk that defendant was undertaking in connection with the merger). The second method is referred to as "fraud-on-the-market" theory, and requires that the plaintiff show "that the defendants' alleged misrepresentations artificially inflated the price of the stock and that the value of the stock declined once the market learned of the deception." <u>Ray</u>, 484 F.3d at 995. The final method is where the plaintiff alleges that loss occurred where a broker falsely assured that a particular investment is free of risk. <u>Id.</u> citing <u>Bastian</u>, 892 F.2d 680, 685-86 (7th Cir. 1990).

The parties argue at length in their overly detailed briefs about plaintiffs' theory of loss causation. In the complaint plaintiffs ground their allegations in the "fraud on the market" approach, and then in their response argue that they have also satisfied the "materialization of risk" approach. These theories become important when proving a claim, but at this stage in the pleadings, plaintiffs' theory of loss causation is not dispositive and is not considered in this opinion.

In the instant case, plaintiffs must allege and have alleged that Navistar's financial statements for fiscal years 2003, 2004, and the first three quarters of 2005 contained material misrepresentations that caused plaintiffs to suffer losses when these misrepresentations "became generally known." See Tricontinental Indus. v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 842-43 (7th Cir. 2007) (finding that loss causation was inadequately pled where plaintiff failed to identify statements by defendants that made "generally known" irregularities in audited financial statements for the relevant fiscal year).

Plaintiffs do not allege one single "mea culpa" corrective disclosure, nor must they to succeed in stating a claim. See Schleicher v. Wendt, 529 F. Supp. 2d 959, 965 (S.D. Ind. 2007) ("The [Dura] Court left open, . . . , the exact mechanism by which the truth could become known to the market, suggesting that a mea culpa announcement by the company was not the only way.). Instead, they have identified a series of disclosures – a leakage of information – which indicated that Navistar's financial statements and accounting practices were unreliable. The market incorporated this information as the truth about the alleged fraud slowly leaked into the marketplace and share prices fell after each instance. Defendants make much of the fact that the drop in share price was not "prompt" or "significant" enough under Dura. But, defendants argue for a much too rigid reading of that decision. All that Dura requires is a "causal connection between the material misrepresentation and the loss." Dura at 343.[4]

_____

[4] Defendants argue, erroneously, that Dura created a 3-prong pleading rule under which plaintiffs must plead: (1) a "significant" drop in the stock price; (2) a "prompt" drop in the stock price; and (3) the drop in price occurred after "the truth" of the fraud become known. This reading of Dura is misleading. The word "prompt" or any variation thereof appears nowhere in the opinion. The complaint in Dura failed to state a claim under Rule 10b-5 because the plaintiffs merely alleged that they had suffered damages as a result of paying artificially inflated prices for the defendant company's securities. The Dura Court held that an allegation of

Context is what matters here, not one moment of truth, but a series of partial disclosures, corresponding ratings adjustments, and subsequent trading that resulted in a significant drop in share price over the Class Period. Plaintiffs identify numerous partial disclosures in their amended complaint, six of which they highlight because of related drops in share price. The six partial disclosures highlighted by plaintiffs are among numerous other disclosures made within the Class Period that revealed problems with previously reported financial statements, internal accounting practices, and the on-going audit investigation. Not all of the disclosures were followed by immediate reductions in share price, but the series of press releases, statements, rating adjustments, and filings taken together create the backdrop against which the cumulative 30% share loss over seven months is plausibly explained. Consequently, plaintiffs have sufficiently pled a causal connection between at least some of these partial disclosures and a reaction in the marketplace that resulted in the reduction in share price.

The Navistar defendants' motion to dismiss Count I on the basis of loss causation is therefore denied.

*2. Scienter*

The Navistar defendants argue that plaintiffs have failed to plead particularized facts demonstrating a strong inference that each individual defendant acted with scienter; *i.e.*, "intent to deceive, manipulate or defraud," or "reckless disregard of a substantial risk" that a representation at issue is false. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976);

---

purchase price inflation alone is insufficient to state a claim. Rather, a plaintiff must allege proximate causation and economic loss.

Higginbotham v. Baxter Intern, Inc., 495 F.3d 753, 756 (7th Cir. 2007); see 15 U.S.C. § 78u-4(b)(1),(2). In this context, recklessness is understood to mean:

> a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the defendant must have been aware of it.

Sundstrand Corp.v. Sun Chemical Corp., 553 F.2d 1033 (7th Cir. 1977), cited in Makor Issues & Rights, Ltd. v. Tellabs Inc., 513 F.3d 702, 704 (7th Cir. 2008) (Makor II). A "complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged, taking into account all plausible opposing inferences." Id. (quoting Tellabs, 127 S. Ct. at 2502, 2510). To determine scienter, the court must consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in insolation, meets that standard." Tellabs, 127 S. Ct. at 2509. The inference must be created as to each individual defendant in cases, like this one, where there are multiple defendants. Id. at 2511, n.6.

The Navistar defendants argue that plaintiffs have failed to plead particularized facts demonstrating a strong inference that each defendant acted with scienter. Specifically, defendants argue that plaintiffs do not allege the typical indicia of culpable knowledge, as opposed to mere negligence or accounting malpractice. According to the Navistar defendants, plaintiffs fail to allege particularized facts demonstrating that the individual defendants profited personally from the fraud through suspiciously timed stock transactions, or that they orchestrated the alleged fraud. The Navistar defendants also fault plaintiffs' fraud theory because the complaint concedes that numerous accounting errors resulted in understated, rather than overstated, income from 2003 through 2005. Further, defendants argue that the bulk of

accounting errors occurred in 2002 and earlier, before there was any motive to commit fraud. Finally, defendants point out that senior management took remedial action and notified shareholders of accounting problems – acts that are wholly inconsistent with the purported scheme to cover up the failed restructuring behind fabricated financial statements.

The Navistar defendants argue that given the facts alleged the most reasonable inference one may draw from the widespread accounting errors is not that defendants were intentionally deceiving investors, but rather that Navistar was negligent in not employing sufficient, competent accounting personnel. In their response, plaintiffs argue that the complaint is rife with allegations that, considered as a whole, adequately allege scienter. Given the heightened pleading requirements of the PSLRA, plaintiffs cannot merely plead that defendants knew or were recklessly unaware about the misstatements. Rather, plaintiffs have the burden to allege particular facts that give rise to a cogent and compelling inference that defendants knew or were recklessly ignorant. Plaintiffs have met this burden.

In their excruciatingly detailed complaint, plaintiffs make numerous allegations demonstrating the Navistar defendants' knowing or reckless conduct. Plaintiffs specifically identify eight indicia of scienter, including: (1) that the Restatement was the product of "intentional misconduct"; (2) the Navistar defendants' misstatements related to sixteen separate accounting areas, all of which directly affected Navistar's income; (3) the magnitude and nature of the alleged fraud; (4) numerous "red flags" that put defendants on notice during the Class Period; (5) that the individual defendants were the senior management of Navistar and had principal responsibility for ensuring compliance with GAAP; (6) the individual defendants certified the accuracy of Navistar's financial statements and the sufficiency of its internal control

and disclosure policies even when they knew them to be inadequate; (7) the individual defendants' Class Period statements demonstrated their knowledge of Navistar's accounting irregularities and incapacities prior to the 2005 Restatement; and (8) the individual defendants' knowledge of an earlier SEC investigation that resulted in the 2004 Restatement for accounting irregularities that foreshadowed problems to come during the Class Period. Plaintiffs further allege that the individual defendants were motivated to manipulate the accounts in order to conceal a failed attempt to return Navistar to profitability and to receive performance-based compensation bonuses. These indicia can be grouped into four general categories that the court will address: (1) red flags; (2) mistatements; (3) the magnitude and pervasiveness of the accounting errors; and (4) motive and opportunity.

i. *Red Flags*

Plaintiffs claim that the individual defendants wilfully or recklessly ignored numerous red flags indicating inherent problems with Navistar's accounting and internal controls. To summarize, the red flags included: a 2004 Restatement documenting accounting errors for fiscal years 2002, 2003, and the first three quarters of 2004;[5] delays in financial reporting to the SEC; an SEC inquiry into the Company's 2004 Restatement; commentary published by a Bear Stearns analyst expressing frustration with the stock and speculation about the weak state of financial systems and controls; defaults on certain covenants in Navistar's bank loans and bank securities due to delays in its SEC filings that affected the company's credit ratings; and Navistar's own

---

[5] The 2004 Restatement was issued in February 2005 for fiscal years 2002, 2003, and the first three quarters of 2004 to correct GAAP misstatements for both Navistar and Navistar Financial, a subsidiary of Navistar. Plaintiffs claim that the 2004 Restatement raised a variety of red flags indicating inadequate accounting capacity and material internal control weaknesses dating as far back as 2002 that the Navistar defendants knew about and recklessly ignored.

acknowledgment of inadequate internal control policies and procedures. Essentially, plaintiffs

claim that instead of investigating or correcting the problems indicated by the red flags, the

individual defendants intentionally issued false and misleading statements to continue concealing

accounting problems during the Class Period.

Defendants do not directly attack plaintiffs' red flag allegations. Instead, they merely

argue that allegations that plaintiffs "should have known" about the accounting errors because

they should have known about the red flags falls short of pleading particularized facts

Supp.orting a strong inference of scienter. Although plaintiffs do not allege that the individual

defendants actually knew about the specific accounting errors, there is no challenge to the

allegations that the individual defendants had knowledge of the numerous red flags.

ii. *Individual Defendants' Statements*

Plaintiffs point to specific representations individual defendants made in Navistar's

earnings releases, conference calls, financial statements, and SEC filings and certifications that

the individual defendants knew (or were recklessly unaware) were false. The examples are too

numerous to reproduce here, but in essence the individual defendants repeatedly made false

statements or certifications about specific matters later addressed in the 2005 10-K.

The false statements include: defendant Ustian's comments in an earnings release

explaining how pension expenses were reduced by changing the way costs were amortized;

defendant Lannert's comments on a conference call to stock analysts attributing a $10 million

reduction in retirement plan expenses to inactive participation; defendant Lannert's comments on

a conference call stating that Navistar's warranty accruals had been strengthened and warranty

reserves were conservative; defendant Lannert's comments during a conference call projecting

that Navistar would be turning pension costs into profits; defendant Schwetschenau's assurances to investors during a conference call that all accounting issues had been fully resolved; defendant Ustian's assurances to investors during a conference call that Navistar had adequate resources and controls to henceforth issue timely and accurate quarterly results and SEC filings; defendant Lannert's repeated assurances to investors that improper capitalization of costs at Navistar's foundry had been fully investigated and remedied; defendants Ustian's and Lannert's statements in Sarbanes-Oxley certifications and SEC filings that there were no weaknesses in the company's controls while admitting that the controls had not been "formalized" or "documented."

There is no dispute that individual defendants made these statements and certifications. The assurances to investors and analysts are most troubling because, unlike SEC certifications, the comments on conference calls are personal appeals to the sensibilities of participants based on the personal integrity and trustworthiness of the speakers. Although it is possible that the individual defendants knew nothing about the content of their representations, this is far from a reasonable inference, let alone a cogent one given the extent of the individual defendants' alleged departures from the truth. A stronger competing inference is that the individual defendants knew, or at least were recklessly unaware, that there were glaring accounting problems within the company that needed to be concealed from or minimized to investors, analysts, and regulators.

iii. *Accounting Errors*

Plaintiffs assert that the accounting errors were too pervasive, simple and massive to be attributed to even gross negligence. Plaintiffs further contend that the only reason Navistar was

able to meet its target earnings per share, cost reductions, and net income during the Class Period was because of the widespread accounting manipulations. The Navistar defendants argue that plaintiffs concede that the accounting errors did not consistently overstate income or understate expenses, undercutting any allegation of fraud. They further contend that the magnitude and nature of the misstatements alone cannot justify a finding of scienter.

Violations of accounting standards are generally insufficient, standing alone, to create a strong inference of scienter. Riggs Ptnrs, LLC v. Hub Group, Inc., 2002 U.S. Dist. LEXIS 20649, *10 (N.D. Ill. Oct. 23, 2002). Nonetheless, the magnitude and nature of accounting errors may belie a defendant's claim that she or it was unaware of any improprieties. Id. The accounting errors here were allegedly relatively straightforward – e.g., accounts were not properly reconciled, transactions were recorded incorrectly, account balances were transferred inaccurately – and therefore easily identified by responsible corporate management. Moreover, the 2005 Restatement reveals that the overall impact of the accounting errors amounted to billions of dollars and affected all but one line item on Navistar's financial statements for three years. Specifically, errors were documented in 16 separate accounting matters, and the Class Period financial results were overstated by $677 million (187%). Essentially, the errors were too basic, there were too many of them, and the bottom line discrepancies were too big (and the inconsistencies in the errors too small) to raise a compelling alternative inference that the errors were a result of mere incompetence.

iv. *Motive and Opportunity*

Plaintiffs assert that the individual defendants were motivated to make misstatements of fact related to Navistar's financial results and accounting practices to collect incentive-based

bonuses and obscure the failure of the company's restructuring efforts. The Navistar defendants argue that plaintiffs' allegations of personal motive have failed to establish a strong inference of scienter because, (1) they do not allege unusual stock activity, and (2) personal financial bonuses are not sufficient to establish a strong inference of scienter.

Although an allegation of insider stock activity that is unusual in timing and amount during the Class Period would raise a compelling inference of scienter and the intent to deceive, insider trading is by no means the only way to allege scienter by raising motive.[6] Here, Ustian and Lannert pocketed $2 million and $828,655 in bonuses respectively as a result of meeting company benchmarks. Although these may be modest sums in the eyes of some securities lawyers, this court does not regard such bonuses and awards to be common among corporate executives in general, or these particular sums to be insignificant. Simple greed is a powerful motivator, as proven by recent events in the marketplace. Personal profit, coupled with professional motives to hide internal weaknesses and paint a rosy picture of the restructuring lend weight to not only a cogent inference of scienter, but a compelling one in light of the alternative suggested by defendants – that the misstatements and errors were due to bungling management.

The Navistar defendants also argue that plaintiffs' cover-up theory fails because the accounting errors subject to restatement did not begin in 2003, but were continuous from before

---

[6] As the Court stated in Tellabs, 551 U.S. at 325:

While it is true that motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference, . . . the absence of a motive allegation is not fatal. . . . [A]llegations must be considered collectively; the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint.

2002.  While this fact may partially diminish the strength of plaintiffs' motive theory, it has the opposite effect on the rest of plaintiffs' allegations.  If the accounting errors, in fact, began pre-2002, there was all the more reason for defendants to have known of the errors.

The heightened pleading standards of the PSLRA were intended to curb abusive securities litigation practices and discourage claims of securities fraud by hindsight.  Arazie v. Mullane, 2 F.3d 1456, 1467-68 (7th Cir. 1993).  Plaintiffs are not required to prove their case in the complaint; all they must do is "state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Here, plaintiffs have offered an overwhelming amount of facts Supp.orting a cogent and compelling inference of defendants' scienter.  While it is true that each allegation standing separately may not Supp.ort a strong inference of scienter, taken together they are sufficient.

Defendants cite to numerous cases to Supp.ort their arguments against many of plaintiffs' allegations.[7]  While it is true that courts have found complaints containing some similar types of allegations of scienter to fall short of the mark, none of those complaints dealt with the combination of allegations pled here.  Thus, although these cases are instructive, they are readily distinguishable.  The court agrees with plaintiffs that defendants cannot defeat a complaint by "cherry picking" particular allegations that, standing alone, might not meet the heightened pleading standard under Rule 9(b) or the PSLRA.  As in the context of an antitrust case even after Bell Atlantic v. Twombly, 550 U.S. 544 (2007), the adequacy of a securities fraud complaint should "not be judged by dismembering it and viewing its separate parts."  In re

---

[7]  In re Bally Total Fitness Sec. Litig., 2006 WL 3714708 (N.D. Ill. July 12, 2006); In re Ceridian Corp. Sec. Litig., 504 F. Supp. 2d 603 (D. Minn. 2007); In re Carreer Educ. Corp., 2007 WL 1029092 (N.D. Ill. Mar. 29, 2007).

Southeastern Milk Antitrust Litigation, 555 F.Supp. 2d 934, 943-944 (E.D.Tenn. 2008) (quoting

Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690 (1962).

Defendants' innocent explanations cannot defeat an otherwise sound pleading.

Negligence can always be offered as an explanation for fraudulent behavior, but here it does not

create an inference that is more compelling than plaintiffs'.

For these reasons, the court concludes that the complaint alleges sufficient particularized

facts to give rise to a strong inference of scienter. The Navistar defendants' motion to dismiss

Count I is dismissed.

### B. Deloitte's Motion to Dismiss Count II - Scienter

Plaintiffs allege that Deloitte rendered unqualified audit opinions on Navistar's financial

statements, contrary to the requirements of GAAS and GAAP, that misstated Navistar's true

financial condition by billions of dollars. More specifically, plaintiffs allege that Navistar's

estimates and methodologies were available to Deloitte at the time of the audits and that Deloitte

"deliberately or recklessly ignored" and failed to investigate them. Plaintiffs also allege that

Deloitte was aware at the time of its audits of other specific, suspicious facts (red flags), the

impact of which it ignored. Finally, plaintiffs allege that Navistar relied heavily on Deloitte,

with Deloitte's knowledge, to prepare its financial statements because the company lacked the

necessary expertise in technical accounting matters.

Deloitte advances three main arguments in Supp.ort of its motion to dismiss: (1) plaintiffs

fail to allege any specific facts of which Deloitte had knowledge but ignored at the time of its

audits; (2) the inference that Deloitte did not commit fraud is much more compelling and cogent

than the inference that it did; (3) even circumstantial evidence offered by plaintiffs cannot establish scienter on the part Deloitte.

As noted above, in the context of securities fraud, recklessness requires proof that the defendant's conduct was "highly unreasonable" and involved "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Makor II, 513 F.3d at 704. As applied specifically to outside auditors, this requirement has been interpreted to mean that "the accounting practices amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." In re First Merchants Acceptance Corp. Sec. Litig., 1998 WL 781118, at *29 (N.D.Ill. Nov. 4, 1998) (citations omitted).

Plaintiffs have included allegations of "warning signs" and "attention grabbers" related to Navistar's financial statements and results, and red flags identifying specific misstatements and GAAP violations that Deloitte deliberately or recklessly ignored. These warning signs and red flags are in part a detailed list of the accounting problems later addressed in the 2005 Restatements. As noted earlier, "fraud in hindsight" based on a restatement is frowned upon, and to Supp.ort a strong inference of scienter plaintiffs must allege particularized facts demonstrating that Deloitte knew or recklessly disregarded the alleged fraud at the time it was perpetuated. As an independent auditor, Deloitte's primary function was to scrutinize Navistar's financial statements, results of operations, and cash flow, and issue an audit opinion to inform investors about the financial health of the company. In doing this, Deloitte required

broad access to Navistar's financial information of all types. Although Deloitte had access to this information, this access alone does not automatically translate into detailed knowledge of the content of all of Navistar's files, documents, and practices.

The audit opinions that were eventually issued represented that Deloitte had conducted its audits in accordance with GAAS and certified that those financial statements were in conformity with GAAP. Although these audit opinions failed to disclose any of the ongoing problems at Navistar or sound any warning bells, the complaint is bereft of any specific allegations of knowledge on the part of Deloitte. Rather, plaintiffs have strung together a series of red flags that "should have" alerted Deloitte to Navistar's accounting problems. Nothing within the complaint, however, sheds light on the who, what, when, where or how of any alleged fraud on the part of Deloitte. See <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990). The allegations are resoundingly general and amount to a convincing claim of accounting malpractice rather than securities fraud. Moreover, it is undisputed that Deloitte made statements to Navistar's Audit Committee in a series of discussions beginning in October 2005 and continuing for several months, stating that it was "unwilling to rely on representations of the former Controller of Navistar and the former Treasurer of Navistar Financial Corporation" and "unable to continue [its] audit" unless Schwetschenau was reassigned. These statements severely undercut an inference of intentional participation in the alleged fraud.

To resolve this motion the court must identify, based on the facts alleged, the most compelling explanation for why this happened. Was Deloitte merely negligent, as it suggests, or are plaintiffs correct that Deloitte's conduct was the product of recklessness to a degree that would constitute securities fraud? GAAS and GAAP violations alone are not enough to compel

an inference of scienter, and plaintiffs' have not alleged sufficient additional facts to raise a strong inference of scienter. Moreover, the competing motives offered by each side - audit fees versus reputation for integrity - are not particularly helpful in resolving this issue.

As noted above, failure to plead motive is not fatal (Tellabs, 557 U.S. at 325), but to plead securities fraud against an auditor requires more than alleging that the defendant failed to detect and report fraudulent conduct by its client. Considering the allegations as a whole, plaintiffs have failed to Supp.ort a cogent inference of scienter that is as at least as compelling as Deloitte's alternative explanation.[8] Therefore, the court grants Deloitte's motion to dismiss because plaintiffs have failed to adequately plead scienter.


## II. *Navistar Defendants' Motion to Dismiss Count III*

The third and final count arises under § 20(a) of the Exchange Act and is brought against Navistar and the individual defendants. Section 20(a) of the Exchange Act imposes liability on persons having control over, or aiding and abetting, violators of the Exchange Act. 15 U.S.C. § 78t(a) which provides:

> [E]very person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Accordingly, to state a claim under § 20(a), a plaintiff must first adequately allege a primary securities violation under the Exchange Act. Pugh, 521 F.3d at 693. Section 20(a)

---

[8] Because the court finds that plaintiffs have failed to plead scienter sufficiently, it need not address the issue of loss causation raised by Deloitte.

claims are construed liberally and require "only some indirect means of discipline or influence short of actual direction to hold a 'control person' liable." Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 881 (7th Cir. 1992) (quoting First Securities I, 463 F.2d 981, 986 (7th Cir. 1972)).

As noted above, plaintiffs have adequately alleged a primary violation of § 10(b) of the Exchange Act. Consequently, plaintiffs' § 20(a) claim is sufficiently pled and Navistar defendants' motion to dismiss Count III is denied.

## CONCLUSION

For the reasons set forth above, the Navistar defendants' motion to dismiss is denied, and Deloitte's motion to dismiss is granted. The Navistar defendants are ordered to answer the complaint on or before August 28, 2009. This matter is set for status conference September 4, 2009, at 10:00 a.m., at which time the court will set a discovery schedule.

**ENTER:** **July 28, 2009**

**Robert W. Gettleman**
**United States District Judge**