**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NORFOLK COUNTY RETIREMENT SYSTEM and PLUMBERS LOCAL UNION 519 PENSION TRUST, individually and on behalf of all others similarly situated,** | ) ) ) ) | **Case No. 07-cv-07014** |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) ) | |
| | ) | **Judge Robert W. Gettleman** |
| **DANIEL C. USTIAN, ROBERT C. LANNERT, MARK T. SCHWETSCHENAU, NAVISTAR INTERNATIONAL CORPORATION, and DELOITTE & TOUCHE LLP,** | ) ) ) ) ) | **Magistrate Judge Nan R. Nolan** |
| **Defendants.** | ) | |

**NAVISTAR DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL PURSUANT TO**
**28 U.S.C. § 1292(B) THE COURT'S ORDER DENYING**
**NAVISTAR DEFENDANTS' MOTION TO DISMISS**

Defendants Daniel C. Ustian, Robert C. Lannert, Mark T. Schwetschenau and Navistar

International Corporation ("Navistar Defendants") respectfully submit this memorandum in

support of their motion to certify for interlocutory appeal the Court's July 28, 2009 order

denying the Navistar Defendants' Motion to Dismiss.

## I.    INTRODUCTION

The Court's Memorandum Opinion and Order dated July 28, 2009 ("07/28/09 Mem.

Op.") denied Navistar Defendants' Motion to Dismiss the Amended Complaint.  In its ruling, the

Court found that Lead Plaintiffs' allegations of "loss causation" were sufficient, notwithstanding

the lack of a connection between any of the specifically alleged revelations of the purported

fraud and a significant stock price drop.  Instead, the Court held that "what matters here" is the

"context" over a seven month period, and that an **aggregated** 30 percent drop in stock price over

this period against the "backdrop" of the alleged corrective disclosures is sufficient.  *See*

07/28/09 Mem. Op. at 12.  The Court did not consider whether the stock price reaction immediately following the alleged disclosures was positive, negative or neutral.  Instead, focusing on *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Court held that the "pleading rule" does not require plaintiffs to plead a "prompt" drop in the stock price following one or more disclosures of the "truth."  *See* 7/28/09 Mem. Op. at 10 fn. 3, 11, & 11 fn. 4.

Navistar Defendants respectfully submit that there is "substantial ground for difference of opinion" as to this "controlling question of law," and that an interlocutory appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Here is why.

The Consolidated Complaint directly alleges that Navistar stock traded in an "efficient market" and that, therefore, the "fraud-on-the-market" presumption applies.  *See* Consolidated Class Action Complaint ("Consolidated Complaint" or "CAC") at ¶¶ 514-515.  Reliance on this doctrine necessarily **means** that Lead Plaintiffs affirmatively allege the market "immediately," "rapidly" and/or "promptly" incorporated into Navistar's stock price all information that was publicly disclosed about the Company – because that is what happens in an efficient market.  As Seventh Circuit law holds, an efficient market means that stock price declines following the disclosure of the "relevant truth" to the market **must** be "immediate," "rapid" and/or "prompt." *Ray v. Citigroup Global Mkts., Inc.*, 482 F.3d 991, 995 (7th Cir. 2007); *West v. Prudential Sec., Inc.*, 282 F.3d 935, 937 (7th Cir. 2002); *The Roots P'ship v. Lands' End, Inc., et al.*, 965 F.2d 1411, 1419 (7th Cir. 1992).  The Court's ruling is contrary to this precedent.

This legal issue with respect to loss causation is dispositive.  Lead Plaintiffs did not make their "efficient market" allegations carelessly.  They did so out of necessity to avoid the requirement to plead and prove individual reliance for each class member.  If, as Lead Plaintiffs allege, the market for Navistar's stock was an **efficient** one during the class period, their failure

to identify significant losses immediately following the alleged "corrective disclosures" means

that there is no loss causation as a matter of law.  Alternatively, if, contrary to the claim as pled,

Lead Plaintiffs rely on "context" over the seven-month period because the market for Navistar

stock was **inefficient**, Lead Plaintiffs will need to prove individual reliance for each class

member – a requirement that necessarily will prevent class certification of this matter.  *Basic*

*Incorporated v. Levinson*, 485 U.S. 224, 242 (1988) (without fraud-on-the-market presumption,

"proof of individualized reliance from each member of the proposed plaintiff class" would be

required and "individual issues . . . [would] overwhelm[] the common ones," thereby

"prevent[ing plaintiffs] from proceeding with a class action.").  Accordingly, resolution of this

issue on appeal will "materially advance the ultimate termination of the litigation."

     Navistar Defendants respectfully request that this Court certify for interlocutory appeal

the following question of law:

> **Whether a plaintiff alleging an efficient market and a fraud-on-the-market claim must plead that a significant stock decline occurred "promptly" after the "truth" is publicly revealed to the market?**

## II.    ARGUMENT

     Section 1292(b) provides a mechanism by which litigants can seek immediate appeal of a

non-final order.  *See* 28 U.S.C. § 1292(b); *see also Anderson v. Montgomery Ward & Co.*, 650 F.

Supp. 1476, 1479 (N.D. Ill. 1987), *aff'd*, 852 F.2d 1008 (7th Cir. 1988).  An appeal under

Section 1292(b) should be certified where: (1) the issue involves a "controlling question of law";

(2) there is "substantial ground for difference of opinion" as to that question of law; and

(3) immediate appeal "may materially advance the ultimate termination of the litigation."  *See* 28

U.S.C. § 1292(b); *see also In re HealthCare Compare Corp. Securities Litigation*, 75 F.3d 276,

279-80 (7th Cir. 1996); *Horwitz v. Alloy Automotive Co.*, 957 F.2d 1431, 1435 (7th Cir. 1992).

A.      **The Issue Presented Is A Controlling Question Of Law**

A question of law is "controlling" for purposes of Section 1292(b) if it is "serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). The legal question of whether Lead Plaintiffs are required to allege a "prompt" drop in the stock price after the "truth" of the fraud becomes known is not merely "serious," it is dispositive.

In the section of their Consolidated Complaint titled "Fraud-On-The Market Presumption," Lead Plaintiffs directly pled that, "[a]t all relevant times, the market for Navistar common stock was an efficient market," which "**promptly** digested current information with respect to Navistar common stock from all publicly available sources." *See* CAC at ¶¶ 514-515 (emphasis supplied). The Court itself found that "in the complaint plaintiffs ground their allegations in the 'fraud-on-the-market' approach." 07/28/09 Mem. Op. at 10 fn. 3; *cf. also id.* at 5 ("the court accepts the complaint's well-pleaded allegations as true.").

The **foundation** of a fraud-on-the-market claim is the "efficient market hypothesis," which says that in an efficient market all available material information about a company is incorporated quickly and rapidly into the stock price. *See Basic*, 485 U.S. at 241-49; *Ray*, 482 F.3d at 995; *West*, 282 F.3d at 938; *Roots P'ship*, 965 F.2d at 1419. The reason Lead Plaintiffs necessarily advanced a fraud-on-the-market claim is to avoid having to plead and prove individualized reliance by class members. This is because a fraud-on-the-market claim assumes that individual investors rely on the stock price (which reflects all public information about the company), not their own reading of every statement and report, when they buy and sell their shares. *See Basic*, 485 U.S. at 245-47; *West*, 282 F.3d at 937-38.

Taking Lead Plaintiffs allegations as true, the Navistar Defendants' purported misstatements were made to a market that promptly incorporated those misstatements and drove up the stock price artificially.  *See Basic*, 485 U.S. at 245-47; *Ray*, 482 F.3d at 995; *West*, 282 F.3d at 937-38; *Roots P'ship*, 965 F.2d at 1419.  Similarly, if loss causation were actually present, when these alleged misstatements were "revealed" – in one announcement or in multiple announcements – the stock price should have "quickly" and "rapidly" incorporated that information, declined, and the plaintiffs would have thereby lost money.[1]  *Id.*

The Seventh Circuit has so ruled on at least two occasions.  In *West*, the Seventh Circuit reversed the district court's class certification order in a securities fraud case because the record did not support the applicability of the fraud-on-the-market doctrine to non-public statements of the defendant.  Significantly, in describing the fraud-on-the-market doctrine, the Court made abundantly clear that prompt stock price reaction to public information is the lynchpin of the doctrine:

> [F]ew propositions in economics are better established than the **quick** adjustment of securities prices to public information. . . . [T]he theme of … fraud-on-the-market decisions is that public information reaches professional investors, whose evaluations of that information and trades **quickly** influence securities prices. . . . [M]arkets are efficient in the sense that they **rapidly** adjust to all public information.

*West*, 282 F.3d at 937-38 (emphasis supplied).

Similarly, in *Ray v. Citigroup Global Mkts., Inc.*, 482 F.3d 991, 995 (7th Cir. 2007), the Seventh Circuit upheld the district court's grant of summary judgment for defendants in a

---

[1]     The Navistar Defendants strongly dispute that any of the alleged corrective disclosures revealed any "truth" about any purported fraud.  At most, the alleged disclosures revealed only that Navistar's financial statements would be delayed and (later) restated.  For purposes of this motion, however, we are focused on the pure legal issue of whether, in a fraud-on-the market claim, *Dura* and its progeny require Lead Plaintiffs to plead a significant loss "just when" the relevant truth is disclosed.  *See Ray*, 482 F.3d at 995.

securities class action because plaintiffs failed to show that the stock lost value as a direct result of the alleged misrepresentations. *Id.* at 995-96. The Court so held because plaintiffs failed to show – like Lead Plaintiffs failed to **plead** here – that the stock price declined "just when" the "truth" was revealed:

> The record affirmatively contradicts the assertion that the value of the [] stock declined **just when** the alleged misrepresentations were revealed. **That is what *Dura* required them to show, and they did not.**

*Id.* at 995 (emphasis supplied); *see also Roots P'ship*, 965 F.2d at 1419 ("[T]he fraud-on-the-market theory … presumes that news is promptly incorporated into stock price."); *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 546 (N.D. Ill. 2007) (stating that publicly available information is incorporated "immediately" or "promptly" in a stock price). Other courts are in accord. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (Alito, C.J.) ("in an open and developed securities market like the New York Stock Exchange, the price of a company's stock is determined by all available material information regarding the company and its business. In such an efficient market, 'information important to reasonable investors ... **is immediately incorporated into the stock price**.'") (emphasis supplied) (citation omitted).

On this subject, Navistar Defendants regret that their Motion to Dismiss left the Court with the impression that we rely on *Dura* alone for the conclusion that a "'prompt' drop in the stock price" is part of the "3-prong pleading rule" for loss causation. *Cf.* 07/28/09 Mem. Op. at 11 fn. 4. To the contrary, Navistar Defendants cited *Dura*, *Ray*, and *Stafford* in support of the claim that Lead Plaintiffs "must plead three things." *See* Mem. in Support at 15. And, in arguing for the "prompt drop" prong of the loss causation test, Navistar Defendants did not rely on *Dura* at all. *See id.* at 16-17; *see also* Reply in Support at 7. In short, whether the court's words are "immediate," "just when," "rapidly," "promptly," or "quickly," the precedents as a

whole do support the legal conclusion that Lead Plaintiffs must plead a "prompt drop in the stock price" in order to state a claim.[2]

The "established" proposition that stock prices adjust "quickly" in an efficient market is more than a theory which Lead Plaintiffs can adopt or reject at their discretion. It is critical to this case. All of the disclosures relied upon by Lead Plaintiffs essentially said the same thing – that Navistar was delaying the release of its 10-K and would restate its financials. Putting aside the fact that these statements were not "corrective" because (i) none of these disclosures revealed any "fraud" and (ii) the rehashing of old news does not qualify as a corrective disclosure, the **only** inference that can be drawn from the "efficient" market's "prompt" reaction to these disclosures – ranging from insignificant decreases, to virtually no reaction at all, to modest increases – is that investors simply did not find the news material. The "disclosures" caused no loss. This conclusion is only confirmed by the fact that, after the end of the artificially chosen class period (when Navistar's stock was at its absolute nadir), Navistar's stock went on a dramatic **upswing** and, significantly, increased by over 2% when the specific "truth" (*i.e.*, the Restatement itself) was revealed. In sum, if the market was – as Lead Plaintiffs allege – efficient, there simply cannot be loss causation here.

    **B.**    **There Is A Substantial Ground For A Difference Of Opinion As To The Issue Presented.**

Certification is warranted if there exists a substantial ground for difference of opinion on the legal issue presented. *See, e.g., Healthcare Compare Corp. v. United Payors & United*

---

[2]    *Dura* itself teaches that "lower price may reflect, not the earlier misrepresentation, but changed economic circumstances … or other events, which taken separately or together account for some or all of that lower price." *Dura*, 544 U.S. at 342-43. The more time that passes between purchase and sale, *Dura* emphasizes, "the more likely that other factors caused the loss." *Id.* It is for this reason, Navistar Defendants submit, that **the Seventh Circuit reads Dura** to "require[]" that plaintiffs show "that the value of the [] stock declined just when the alleged misrepresentations were revealed." *Ray*, 482 F.3d at 995 (7th Cir. 2007).

*Providers, Inc.*, 1998 WL 259979, at *1 (N.D. Ill. May 8, 1998) (Moran, J.) ("[I]t is not necessary to conclude that this court's decision is likely to be reversed. If we thought the decision wrong we would not have made it."). The test for determining whether there is a substantial ground for difference of opinion is whether the moving party's arguments are "not insubstantial." *See Mueller v. First Nat'l Bank*, 797 F. Supp. 656, 663-64 (C.D. Ill. 1992).

The Navistar Defendants' arguments are "substantial" in light of the foregoing precedent. The Navistar Defendants respectfully submit that the Seventh Circuit's opinions in *West*, *Ray* and *Roots* – if not *Dura* itself – require a significant price drop "**just when**" the truth is revealed (*i.e.* quickly and rapidly), which conclusion is similarly compelled by the efficient market theory. *Ray*, 482 F.3d at 995; *West*, 282 F.3d at 937. The Court's opinion is to the contrary. *See* disc. *supra* at 4-7. Accordingly, there is "substantial ground for a difference of opinion."

### C.     An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation.

As discussed above, resolution of the "promptness" issue in Navistar Defendants' favor effectively will terminate the litigation. *See* disc. *supra* at 2-3, 7. At minimum, it would materially advance the ultimate termination of the litigation because it would narrow the issues, streamline damages and expert discovery, limit or avoid protracted battles over market efficiency at both the class stage and at the merits stage, and provide appropriate boundaries for damages in this dispute. *See, e.g., E.E.O.C. v. Dial Corp.*, No. 99 C 3356, 2001 WL 1945088, at *4-5 (N.D. Ill. Dec. 27, 2001) (an appeal materially advances the termination of litigation where it stands to significantly limit the scope of issues for discovery and trial); *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, MDL 997, 1998 WL 808992, at *6-7 (N.D. Ill. Nov. 17, 1998) (Section 1292(b) certification materially advances the litigation where outcome of appeal would result in substantial savings of both judicial and party resources).

### III.     CONCLUSION

For the foregoing reasons, Navistar Defendants respectfully request that the Court certify

the following issue for interlocutory review:

> **Whether a plaintiff alleging an efficient market and a fraud-on-the-market claim must plead that a significant stock decline occurred "promptly" after the "truth" is publicly revealed to the market?**

Navistar Defendants further request whatever other relief the Court deems appropriate.

Dated:  August 17, 2009                     Respectfully submitted,

                                            /s/Sean M. Berkowitz
                                            One of the Attorneys for Defendants
                                            Navistar International Corporation,
                                            Daniel C. Ustian, and Robert C. Lannert

Laurence H. Levine                          Sean M. Berkowitz
Maaike S. Almeida                           Cary R. Perlman
LAURENCE H. LEVINE LAW OFFICES              Mark S. Mester
190 South LaSalle Street, Suite 3120        Robin M. Hulshizer
Chicago, Illinois 60603                     Matthew L. Kutcher
Phone: (312) 291-7000                       Robert C. Levels
Fax: (312) 291-7015                         LATHAM & WATKINS LLP
                                            Sears Tower, Suite 5800
                                            233 South Wacker Drive
                                            Chicago, Illinois 60606
                                            Phone: (312) 876-7700
                                            Fax: (312) 993-9767

                                            s/Patrick S. Coffey
                                            One of the Attorneys for Defendant
                                            Mark T. Schwetschenau

                                            Patrick S. Coffey
                                            Timothy M. Maggio
                                            LOCKE LORD BISSELL & LIDDELL LLP
                                            111 South Wacker Drive
                                            Chicago, Illinois 60606
                                            Phone: (312) 443-0700
                                            Fax: (312) 896-6702

CH\1116795.6