**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM and BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 07-cv-07014 |
| Plaintiff, | ) ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Nan R. Nolan |
| DANIEL C. USTIAN, ROBERT C. LANNERT, MARK T. SCHWETSCHENAU, NAVISTAR INTERNATIONAL CORPORATION, and DELOITTE & TOUCHE LLP, | ) ) ) ) ) | |
| Defendant. | ) | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO COMPEL PRODUCTION OF
<u>DOCUMENTS FROM DEFENDANTS</u>**

Lead Plaintiffs, Norfolk County Retirement System and Plumbers Local Union 519 Pension Trust, by their attorneys, submit this Memorandum in support of their motion to compel production of documents requested in their September 29, 2009 First Request for Production of Documents to All Defendants ("Document Request").

Lead Plaintiffs seek an order compelling Defendants Navistar International Corp. ("Navistar" or "Company"), Daniel C. Ustian ("Ustian"), Robert C. Lannert ("Lannert") and Mark T. Schwetschenau ("Schwetschenau") (collectively, "Defendants") to:

a.  Produce materials responsive to Document Request Nos. 3-36, 48, 52, 56 and 57 (documents related to loss causation issues), subject to the clarification in Lead Plaintiffs' November 24, 2009 letter, attached hereto as Exhibit H[1];

b.  Produce materials responsive to Document Request Nos. 37 and 38 (documents requested by the SEC and produced by Defendants to the SEC); and

c.  Complete production of the documents Defendants have agreed to, but have yet to, produce (Defendants have agreed to produce documents responsive to Document Request Nos. 44, 45, 53, 54, 55, 59, 60 and 61).

## BACKGROUND

### I.   Allegations of the Complaint

As detailed in Lead Plaintiffs' Consolidated Class Action Complaint ("Complaint"), this action alleges that Defendants violated Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 240.10b-5.

On July 28, 2009, the Court sustained the Complaint in large part, dismissing only the claims against Deloitte & Touche LLP, and on September 10, 2009 the Court issued its discovery Scheduling Order setting a date for Lead Plaintiffs to file their class certification motion and referring all discovery matters to this Court.  *See* July 29, 2009

---

[1]  The Exhibits annexed to this Memorandum are hereinafter referred to as "Ex __."

Memorandum Opinion and Order [Docket No. 92]; September 10, 2009 Scheduling Order [Docket No. 105].

Lead Plaintiffs allege that Defendants made misrepresentations and omitted to disclose certain material information concerning Navistar's accounting practices during the Class Period. Defendants' accounting violations resulted in a $677 million restatement, wiping out nearly four years of reported income.

Navistar issued earnings releases indicating that the Company was either meeting or beating analyst expectations and/or Navistar's own previous guidance for each quarter and fiscal year in the class period (February 14, 2003 through July 17, 2006, inclusive). Each earnings release touted Navistar as becoming a more profitable company. Despite Navistar's positive reports, the Company's internal controls over financial reporting had material weaknesses, resulting in numerous violations of generally accepted accounting principles ("GAAP"). Further, the material control weaknesses allowed Defendants to engage in intentional misconduct, resulting in material misstatements of Navistar's Class Period financial results. The Complaint identifies numerous partial disclosures that Defendants made during the Class Period that gradually revealed the "truth" about Navistar's financial condition and alleged securities fraud to the market.

## II.   **Lead Plaintiffs' Attempts to Resolve This Dispute**

On September 29, 2009, Lead Plaintiffs served Defendants with their first Document Request. The Document Request was tailored to discovery related to class certification or merits issues that would be raised in support of, or in opposition to, class certification. On October 29, 2009, Defendants served their Objections and Responses to Lead Plaintiffs' Document Requests (collectively, "Objections and Responses"). In their

Objections and Reponses, Defendants refuse to produce responsive documents to 53 of the 61 individual requests in the Document Request. *See* Ex A, Defendants' Objections and Responses (providing Lead Plaintiffs' Document Request and the responses and objections thereto).[2]

In an attempt to resolve outstanding discovery issues without the Court's intervention – and in accordance with the Seventh Circuit Electronic Discovery Pilot Program, Principle 2.01 (Duty to Meet and Confer on Discovery and to Identify Disputes for Early Resolution) – Lead Plaintiffs met and conferred with Defendants on several occasions and sent Defendants numerous letters explaining why Lead Plaintiffs are entitled to receive the requested documents.[3]   In addition, Lead Plaintiffs have offered stipulations that would limit the scope of loss causation issues at class certification, which Defendants have rejected. *See* Ex B, Lead Plaintiffs' October 20, 2009 draft stipulations.

Currently, the Parties are at an impasse.   Throughout the discovery process, Defendants have rigidly maintained their positions that: (1) Lead Plaintiffs are entitled to virtually no discovery concerning loss causation issues that Defendants may raise in opposition to class certification; and (2) Lead Plaintiffs are entitled to no discovery of documents Defendants have already produced to the SEC.  Defendants have made only a very limited production of documents primarily related to insurance coverage and the

---

[2]  Defendants Navistar, Ustian and Lannert served joint Objections and Responses.  Defendant Schwetschenau served separate Objections and Responses that "expressly adopt[ed] and incorporate[d]" the Objections and Reponses of the other Defendants, and otherwise stated that Schewetschenau had no responsive documents to the Document Requests.  References to "Defendant's Objections and Responses" refer solely to those of Navistar, Ustian and Lannert.

[3]  Lead Plaintiffs met and conferred with Defendants on October 15 and November 17, 2009. Lead Plaintiffs sent letters to Defendants on November 5, 16 and 24, 2009 addressing outstanding document production issues.  Defendants sent responsive letters on November 11 and 16, 2009.

number of outstanding shares of Navistar common stock.[4]

As a result of Defendants' refusal to meaningfully cooperate in any way, Lead Plaintiffs now move this Court to compel Defendants to provide documents responsive to certain of Lead Plaintiffs' Document Requests.

## ARGUMENT

Parties may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Rule 26 is interpreted broadly.  *See, e.g., Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, (1978); *In re Aircrash Disaster Near Roselawn, Indiana,* 172 F.R.D. 295 (N.D. Ill. 1997).

**I.      Defendants Must Produce Documents Concerning Loss Causation Issues They Intend To Raise During Class Certification**

Lead Plaintiffs are entitled to receive, prior to resolution of the motion for class certification, documents responsive to Document Request Nos. 3-36, 48, 52, 56 and 57, all of which relate to the disclosures Lead Plaintiffs allege caused the dissipation of the artificial inflation in Navistar's stock price (the "loss causation disclosures").[5]

---

[4]   Lead Plaintiffs, on the other hand, have willingly produced to Defendants the responsive documents in their possession, including documents and information requested by Defendants that they had initially refused to produce.  *See* Ex I, Lead Plaintiffs' November 24, 2009 letter, at 1 ("We have further considered defendants' requests for production of certain additional documents or information.  While we continue to dispute the validity of these requests or the potential relevance of the information sought, in the interest of cooperation and in the hope of easing the burdens on the parties and the Court, we will provide the following additional materials that defendants have requested.").   Those documents have been produced as of December 2, 2009.

[5]   Document Request Nos. 3-36, 48, 52, 56 and 57 (collectively, the "loss causation requests") are organized as follows.  Request Nos. 3-35 (odd) seek all documents concerning the alleged partial disclosures during the last eight months of the Class Period.  Request Nos. 4-36 (even) seek all documents concerning the reaction by the market and/or analysts to the partial disclosures referenced in Request Nos. 3-35 (odd).  Each ordered pair of odd and even Requests addresses the

Defendants will argue in their opposition to class certification, as they did in their motion to dismiss, that the loss causation disclosures do not satisfy the standards of loss causation because they do not disclose "truth" to the market.[6]  *See* Memorandum of Law In Support of the Navistar Defendants' Motion to Dismiss, at 18 [Docket No. 79]; *see also* July 28, 2009 Memorandum Opinion and Order, at 8-12 [Docket No. 92] (rejecting Defendants' argument).

Defendants have already indicated that such an argument will be raised at class certification.  *See* Ex E, Defendants' November 11, 2009 letter, at 2 (stating that "loss causation is, in fact, a class certification issue."); *see also* Navistar Defendants' Memorandum in Support of Bifurcation of Discovery [Docket No. 102], at 3.  Also, Defendants concede that the loss causation requests "relate to the issue of loss causation" and "touch on class certification issues."  Ex E, Defendants' November 11, 2009 letter, at 1-2.  Therefore, the loss causation requests seek material properly within the scope of

---

same disclosure.   For example, Document Request No. 3 seeks "[a]ll documents or communications concerning Navistar's December 14, 2005 announcement that it had 'postponed a scheduled meeting with security analysts and shareowners because the company's external audit for Fiscal 2005 is still in progress.'"   Document Request No. 4 then seeks "[a]ll documents or communications concerning reaction by the market and/or analysts regarding" the subject of Document Request No. 3, "and the impact of the same on the price of Navistar stock."   Document Request Nos. 48, 56 and 57 seek documents reflecting communications concerning the reason(s) for the movement of the price of Navistar securities that occurred after the partial disclosures (*i.e.,* were the price declines caused by the revelation of "truth" of the fraud).   Document Request No. 52 seeks documents reflecting communications between Defendants and any securities analyst, investment bank, investor group, or rating agency.

[6]  Even if Defendants do not ultimately raise the issue of loss causation at class certification, they have refused to stipulate to that effect.  *See supra* at 3.  Therefore, Lead Plaintiffs must be provided with discovery related to that issue so Defendants cannot ambush Lead Plaintiffs with a contested motion for class certification to which Lead Plaintiffs lack the necessary discovery to respond.

discovery as outlined in the Court's September 10, 2009 Scheduling Order [Docket No. 105] ("Scheduling Order").[7]

Nevertheless, Defendants repeatedly refuse to provide Lead Plaintiffs with documents responsive to the loss causation requests. *See* Ex E, Defendants' November 11, 2009 letter, at 2 (refusing to produce documents responsive to Lead Plaintiffs' loss causation requests); Ex G, Defendants' November 16, 2009 letter, at 1 ("[o]ur position remains the same"). Defendants' refusal represents an improper attempt to dictate the scope of available arguments regarding loss causation without agreeing to produce information probative of that issue. To put it simply, if Defendants intend to introduce loss causation as an issue at class certification, the Parties should have the opportunity to conduct substantive discovery necessary to elicit evidence in support of their positions.

### A.   Lead Plaintiffs' Loss Causation Requests Are Not Improper Or Irrelevant

Defendants' refusal to provide the requested documents is primarily supported by Defendants' own misguided view of loss causation: that a disclosure must, on its face, specifically reference the allegedly misstated or omitted facts that form the basis of the fraud in order to reveal the "truth" of those facts to the market. This narrow construction of loss causation is supported by neither law nor reason. As the District Court in this case has held, "the *Dura* Court did not specify what form a disclosure must take, to what extent it must reveal misrepresentations, or how it must refer to the misstatements or omissions," to demonstrate loss causation. July 28, 2009 Memorandum Opinion and Order, at 9-10 [Docket No. 92] (citing *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501,

---

[7]  *See* Scheduling Order at 3, ¶ 7 [Docket No. 105] (stating that "bifurcation of discovery is not appropriate, but encourag[ing] the parties to structure discovery to avoid taking discovery related *solely to the merits* until the court decides the motion for class certification." (Emphasis added)).

540 (N.D. Ill. 2007), and explaining that *Motorola* "discuss[es] the conclusion of several courts and commentators that *Dura* does not impose a 'corrective disclosure' requirement for showing loss causation, and conclud[es] that 'a disclosure sufficient to satisfy loss causation can occur in ways other than an announcement that points directly to a previous representation and proclaims its falsity.'").[8]

Consequently, although a disclosure may not mention or refer to the subject of the fraud, if a plaintiff shows – e.g., by way of internal documents surrounding and reflecting the circumstances of the disclosure – "that significant aspects of the still-concealed fraud in fact provided the catalyst for [the disclosure], then the share price decline following [the disclosure] might indeed dissipate the fraudulent price inflation; in such circumstances, there is no good reason why the [disclosure] should not serve as a disclosure in which the relevant truth begins to leak out." *Motorola*, 505 F. Supp. 2d at 546-47 (internal quotation omitted) (analyzing internal documents and e-mails generated at the time of a disclosure – obtained by plaintiff through "extensive discovery" – to determine if the disclosure was sufficiently connected to the "truth" of defendants' alleged fraud).[9]

---

[8]  *See, e.g., Silverman v. Motorola, Inc.*, No. 07 Civ. 4507, 2008 WL 4360648, at *15 (N.D. Ill. Sept. 23, 2008) (rejecting defendants' contention that merely because a disclosure "[said] nothing about" the alleged fraud, the disclosure could not have revealed "truth" about the fraud to the market.  "We believe that the defendants read the loss causation requirement too narrowly."); *Motorola*, 505 F. Supp. 2d 501 at 546 ("the fact that Motorola's February 23 [earnings] Warning did not mention [the subject of the fraud], or refer on its face to [the subject of the fraud], is not necessarily fatal" to plaintiff's ability to establish loss causation); *see also In re New Century*, 588 F. Supp. 2d 1206, 1236 (C.D. Cal. 2008) ("[Defendant] argues that *Dura* requires Plaintiffs to plead a fact-for-fact corrective disclosure to sufficiently allege loss causation. The law does not clearly support this interpretation.").

[9]  The court in *Motorola* reviewed the plaintiff's evidence for any "e-mail correspondence, document, or testimony" "suggesting that the [disclosure] was issued *because of* [defendants'] concerns [about the fraud]" or that "these concerns "*actually* motivated [the disclosure]." *Id.*

Defendants' statements to the contrary are incorrect.  *See* Memorandum of Law In Support of the Navistar Defendants' Motion to Dismiss, at 18 [Docket No. 79] (arguing that one of the partial disclosures identified in the Complaint could not have disclosed to investors the "truth" about "the existence of potential accounting problems at Navistar" because it did not mention such problems "on its face."); Ex E, Defendants' November 11, 2009 letter, at 2 ("While the public announcement [contained in a loss causation disclosure] itself may be relevant [to the loss causation determination] (*e.g.,* did it disclose the 'truth' to the market?), we fail to see the relevance of any non-public information relating to these disclosures."); Ex G, Defendants' November 16, 2009 letter, at 1 ("The determination of whether the 'truth' was revealed in a disclosure . . . depends on what the disclosure says, not what the 'purposes' were in issuing the disclosure.").

*Motorola* explains why Defendants' position is contrary to public policy:

> Precluding a plaintiff from establishing loss causation merely because of the absence of the kind of explicit corrective disclosure that Defendants would require, where the market in fact learned and absorbed the relevant truth anyway, seem unduly harsh.

> Moreover, [such a] proposed rule would provide an expedient mechanism for wrongdoers to avoid securities fraud liability.  A company that has, for example, booked revenue from non-existent contracts could simply issue some damaging announcement that appears on its face unrelated to any fraudulent scheme, *e.g.,* a significant earnings warning citing order weakness, wait for its share price to plummet, and then disclose the wrongdoing once the damage has been done.  The plaintiff would be unable to tie its loss, *i.e.,* the share price decline, to the fraud, rather than to the apparently unrelated announcement.  . . . [T]he loss causation requirement should not allow securities fraud defendants to immunize themselves with a protracted series of partial disclosures.

505 F. Supp. 2d at 544 (internal quotation omitted) (reviewing plaintiff's evidence surrounding the circumstances of the disclosure for any "indication that Defendants attempted to minimize securities fraud liability by issuing the [disclosure] in an effort to

depress share price prior to the release of [information about the fraud], so that the major damage would have already been done by the time complete disclosure occurred.").

Lead Plaintiffs are entitled to obtain internal documents reflecting the circumstances of the loss causation disclosures to demonstrate that those disclosures are, in fact, linked to Navistar's then still-concealed financial and accounting improprieties. Such evidence would demonstrate loss causation by linking the declines in Navistar's share prices following the disclosures with the dissipation of the artificial price inflation.

Defendants cannot be allowed to contest class certification based on an argument that Lead Plaintiffs have not established loss causation, without providing Lead Plaintiffs discovery related to that issue. Defendants' attempt to both challenge loss causation and prevent Lead Plaintiffs from responding is inappropriate.

### B.  Lead Plaintiffs' Loss Causation Requests Are Not Overbroad Or Burdensome

Defendants have also refused to produce responsive documents to the loss causation requests because the requests are supposedly unduly burdensome. *See* Ex E, Defendants' November 11, 2009 letter, at 2 (characterizing the loss causation requests as "overly broad and unduly burdensome," and stating that even individual requests "call[] for virtually every document relating to Navistar's financial reporting and operations"). Defendants' characterization is unreasonable and is based on a severe misinterpretation of the scope of the documents Lead Plaintiffs seek to obtain.

Lead Plaintiffs corrected Defendants' misimpression of the breadth of documents they would be required to produce, but such clarification has not altered Defendants' position. *See* Ex H, Lead Plaintiffs' November 24, 2009 letter, at 3 ("We also wish to clarify that Requests Nos. 3-36, 48, 52, 56 and 57 should not be interpreted as seeking

every conceivable document related to any of the underlying, technical accounting or restatement issues. . . . . At this stage, plaintiffs seek documents or communications related to or reflecting the process, circumstances and reaction to the alleged loss causation disclosures.   This would include certain documents identifying the contemporaneous context for the disclosure . . ., as well as drafts and other documents related to the decision that caused the disclosure to occur.   Contrary to defendants' contentions otherwise, these requests cannot be interpreted as an overbroad or burdensome request for every piece of paper at Navistar over a multi-year period.").

Lead Plaintiffs have even attempted to negotiate with Defendants to take "off the table" all loss causation requests (representing more than half of Lead Plaintiffs' Document Requests) prior to the Court's decision on the motion for class certification. Such a measure would significantly reduce the scope of Defendants' required document production unless and until a class is certified and the Parties engage in merits discovery. *See* Ex F, Lead Plaintiffs' November 16, 2009 letter, at 2 ("We have attempted to limit and define the scope of class discovery by proposing a set of draft stipulations. . . . . For example, if defendants would agree to waive arguments about whether the disclosures at issue dissipated inflation (or to use defendants' terms, revealed 'truth'), production of certain documents discussed above may not be necessary.").

Defendants are unwilling to allow these issues to be deferred.  For example, at the October 15, 2009 meet and confer, Lead Plaintiffs suggested that the Parties stipulate to that effect.  *See* Ex C, Parties' October 29, 2009 letter to Judge Nolan describing the parties' October 15, 2009 meet and confer, at 2 ("Acknowledging the need to try and resolve disagreements regarding the appropriate scope of discovery, the parties are

considering the use of stipulations to limit class certification issues."). Following the October 15, 2009 meet and confer, Lead Plaintiffs sent draft stipulations regarding class certification to Defendants ("Lead Plaintiffs' Draft Stipulations"). Lead Plaintiffs' Draft Stipulations provide, *inter alia*, that the Parties will not challenge the sufficiency of the loss causation disclosures identified in the Complaint on the class certification motion. *See* Ex B, Lead Plaintiffs' Draft Stipulations, at ¶¶ 13-18.

Defendants did not respond to Lead Plaintiffs regarding their Draft Stipulations for several weeks. *See* Ex D, Lead Plaintiffs' November 5, 2009 letter, at 3 ("Anticipating that it would be helpful to reach agreement about the scope of class certification discovery, we had previously sent to you on October 20, 2009 a set of draft stipulations addressing scope. We have not yet heard back from you regarding the draft and hope that you will be in a position to discuss those stipulations tomorrow."); Ex F, Lead Plaintiffs' November 16, 2009 letter, at 2 ("Despite the fact that we circulated a draft of those proposals on October 20, 2009, we have not received comments or a counter-proposal from defendants.").

After sending Lead Plaintiffs two letters refusing to back down from their position that the loss causation requests were improper (*see* Exs E and G, Defendants' November 11 and 16, 2009 letters), and reiterating that position during the Parties' second meet and confer on November 17, 2009, Defendants refused to agree to Lead Plaintiffs' proposed stipulations aimed at taking loss causation issues "off the table" at class certification.

Throughout this discovery process, Lead Plaintiffs have attempted to work with Defendants to secure the production of documents responsive to the loss causation requests. Lead Plaintiffs have exhausted all options to resolve this issue without the

Court's intervention and have no choice but to seek the Court's assistance in compelling Defendants to produce the documents to which Lead Plaintiffs are entitled.

## II.    Defendants Must Produce Documents They Provided To The SEC

Lead Plaintiffs are also entitled to production of documents responsive to Document Request Nos. 37 and 38, which seek materials Defendants previously produced to the SEC or received from the SEC in connection with any SEC investigations into Navistar's restatement of its financial results for 2002 through the first three quarters of 2005 (the "SEC production documents").

By definition, the requested documents have already been collected, reviewed and produced; hence, Defendants can claim no burden in providing them to Lead Plaintiffs. Nevertheless, Defendants repeatedly refuse to provide Lead Plaintiffs with any documents responsive to Request Nos. 37 and 38 (the "SEC investigation requests").  *See* Ex A, Defendants' Objections and Responses at 27-29 (indicating a blanket refusal to produce any responsive documents); Ex E, Defendants' November 11, 2009 letter, at 3 (same).   Defendants cite two primary reasons for their refusal to produce the SEC production documents, both of which are undermined by the absence of any burden such production would entail: (1) that producing such documents "would require undue expense;" and (2) that the SEC investigation requests violate the Court's Scheduling Order because they involve issues "related solely to the merits and do not bear on class certification."  *See* Ex A, Defendants' Objections and Responses at 27-29.

The first reason listed above relates to burden which, as discussed, should not be a factor with respect to documents that have already been collected, reviewed and produced.  *See* Ex D, Lead Plaintiffs' November 5, 2009 letter, at 2 (with respect to the

SEC investigation requests, "it is unclear what basis the Navistar Defendants have to claim burden."). Furthermore, although Defendants reference the burden and cost-related issues such production would allegedly entail, they have not provided any information regarding the volume, scope and general content of the production. *See Id.* at 2-3 ("As we have previously requested at our prior meeting, we would like information concerning the documents produced to the SEC, including what documents were requested, the scope of the production, the volume of the production and the methodologies and searches used to collect ESI."); Ex F, Lead Plaintiffs' November 16, 2009 letter, at 3 ("Despite our repeated requests for information about the nature of the requests made by the SEC and the documents produced to the SEC (including the volume and format of such production(s)), Navistar has provided no information in response to those inquiries. We reiterate our request for this information.").

Defendants' second stated reason for refusing to produce the SEC production documents is similarly unavailing. First, while Defendants refuse to describe the content of the SEC production, it is likely that some documents produced to the SEC would bear on class certification issues and must be produced to Lead Plaintiffs.

Second, to the extent that some of the SEC production documents bear on matters beyond those relevant to class certification, production of those documents does not violate the Court's Scheduling Order. Defendants' arguments about the need to "bifurcate" discovery were based primarily on the purported burden merits discovery would entail. *See* Navistar Defendants' Memorandum in Support of Bifurcation of Discovery [Docket No. 102], at 3-5. Although the Court rejected Defendants' "bifurcation" request, finding in its Scheduling Order that "bifurcation of discovery is not

appropriate," it did provide for a degree of staging between class certification and merits discovery.  *See* Court's Scheduling Order at 3, ¶ 7 [Docket No. 105].  This addressed Defendants' arguments about the burdensome nature of merits discovery.  However, those arguments do not apply to the SEC production requests because, as discussed, the requested documents would not be burdensome to produce.

Finally, Defendants' position on the SEC production seems based on a view that there is a plenary stay of discovery in place.  There is not.  Defendants' motion to dismiss has been denied and the burden associated with producing these documents is minimal.  Citing the limited burden in doing so, courts have frequently required parties to produce documents provided to regulators even with the PSLRA stay of discovery in place.  *See, e.g., In re Bank of America Corp. Sec., Derivative & "ERISA" Litig.*, No. 09 MDL 2058, 2009 U.S. Dist. LEXIS 108322 [no Westlaw citation available], at *8 (S.D.N.Y. Nov. 16, 2009) (allowing discovery to move forward despite the operation of the PSLRA stay as to documents produced to various government agencies because the documents "have already [been] collected, reviewed, and organized . . . for production in other proceedings, and the burden of making another copy for plaintiffs here will be slight."); *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913, 2009 WL 86763, at *4 (S.D.N.Y. Jan. 12, 2009) (allowing same for documents produced to regulator because the "burden is slight when a defendant has 'already found, reviewed and organized the documents.'").

Defendants have no reasonable justification for their refusal to produce documents provided to the SEC.  Such documents have already been collected, reviewed and organized, and the burden of making a copy for Lead Plaintiffs will be slight.

### III.     Defendants Must Complete Production Of Documents They Have Previously Agreed To Produce

Defendants agreed in their Objections and Responses to produce documents in response to eight of Lead Plaintiffs' 61 Document Requests – Nos. 44, 45, 53, 54, 55, 59, 60 and 61.  *See* Ex D, Lead Plaintiffs' November 5, 2009 letter, at 1, n.1 (confirming Lead Plaintiffs' understanding that "Defendants will produce non-privileged or protected documents responsive only to Request Nos. 44, 45, 53, 54, 55, 59, 60 and 61.").

Defendants' Objections and Responses were served on October 29, 2009.  Since that time, Defendants have produced a mere 33 pages of documents responsive to Lead Plaintiffs' Document Request.  Lead Plaintiffs have repeatedly requested information about the volume and timing of production of the documents defendants have agreed to produce in response to Document Request Nos. 44, 45, 53, 54, 55, 59, 60 and 61.  *See* Ex F, Lead Plaintiffs' November 16, 2009 letter, at 4 ("Please let us know as soon as possible when defendants will begin producing the documents they have agreed to produce and when they anticipate being able to complete production."); Ex H, Lead Plaintiffs' November 24, 2009 letter, at 3 ("We reiterate our request for information about when defendants anticipate completing production of those documents they have agreed to produce.").  Defendants have not provided this information.

Defendants' should be directed to complete production of documents responsive to the agreed-to requests.

### CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their motion to compel and order the Defendants to produce all documents responsive to each of the foregoing Requests.

Respectfully submitted,

**NORFOLK COUNTY RETIREMENT SYSTEM
AND PLUMBERS LOCAL UNION 519
PENSION TRUST**

Dated:  December 9, 2009                              <u>       /s/James A. Harrod        </u>
                                                  One of Their Attorneys

ROBINSON CURLEY & CLAYTON, P.C.
C. PHILIP CURLEY
FAY CLAYTON
ALEEZA M. STRUBEL
300 South Wacker Drive, Suite 1700
Chicago, IL  60606
Telephone:  312/663-3100
312/663-0303 (fax)

*Plaintiffs' Liaison Counsel*

WOLF POPPER LLP
LESTER L. LEVY
JAMES A. HARROD
ROBERT S. PLOSKY
845 Third Avenue
New York, NY  10022
Telephone:  212/759-4600
212/486-2093 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JACK REISE
DOUGLAS WILENS
ELIZABETH A. SHONSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

*Co-Lead Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert Plosky, an attorney, hereby certify that on December 9, 2009, I caused to be served on the following parties a copy of **Lead Plaintiffs' Notice of Motion To Compel Production of Documents**, through the Court's ECF system:

Sean M. Berkowitz
Cary R. Perlman
Mark S. Mester
Robin M. Hulshizer
B. John Casey
Matthew L. Kutcher
**LATHAM & WATKINS LLP**
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-7700 – Telephone
(312) 993-9767 – Facsimile
sean.berkowitz@lw.com
cary.perlman@lw.com
mark.mester@lw.com
robin.hulshizer@lw.com
john.casey@lw.com
matthew.kutcher@lw.com

*Counsel for Defendants Daniel C. Ustian, Robert C. Lannert, Navistar International Corporation*

Patrick S. Coffey
Timothy Maggio
**LOCKE LORD BISSELL & LIDDELL LLP**
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0700 – Telephone
(312) 896-6702 – Facsimile
pcoffey@lordbissell.com
tmaggio@lordbissell.com

*Counsel for Defendant Mark T. Schwetschenau*

Laurence H. Levine
Maaike S. Almeida
**LAW OFFICES OF LAURENCE H. LEVINE**
190 South LaSalle Street, Suite 3120
Chicago, Illinois 60603
(312) 291-7000 – Telephone
(312) 291-7015 – Facsimile
laurence.levine@lhlevine.com
maaike.almeida@lhlevine.com

*Counsel for Defendants Daniel C. Ustian, Robert C. Lannert, Navistar International Corporation*

Jonathan C. Medow
James E. Barz
**MAYER BROWN ROWE & MAW LLP**
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0060 – Telephone
(312) 701-7711 – Facsimile
jmeadow@mayerbrownrowe.com
jbarz@mayerbrownrowe.com

*Counsel for Defendant Deloitte & Touche USA LLP*

_____ */s/* Robert Plosky _____